**Marilyn TerKEURST, Temporary Personal Representative of the Estate of Thomas J. TerKeurst, Deceased, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. G80–853 CA1.**

United States District Court, W.D. Michigan, S.D.

Feb. 16, 1982.

On Motion for Reconsideration July 7, 1982.

Donald C. Exelby, Cholette, Perkins & Buchanan, Grand Rapids, Mich., for plaintiff.

Phillip J. Kolczynski by Lee J. Ross, Jr., Torts Branch, Civ.Div., U.S. Dept. of Justice, Washington, D.C., John A. Smietanka, U.S. Atty., Grand Rapids, Mich., for defendant.

## OPINION

HILLMAN, District Judge.

Thomas J. TerKeurst was killed in an airplane crash on June 11, 1979, when a DC–3 aircraft owned and operated by the United States Forest Service crashed into the Selway River in Northeastern Idaho. On the basis of a fact-finding operation conducted by the Forest Service, it appears that both engines of the DC–3 aircraft failed to operate at the time of the crash. This action was instituted by the temporary personal representative of the Estate of Thomas J. TerKeurst. Jurisdiction is invoked under 28 U.S.C. §§ 1346(b) and 2674 (1976).

Defendant moves the court to dismiss this action pursuant to Fed.R.Civ.P. 12(b)(3) and 12(b)(6) for improper venue and for failure to state a claim upon which relief can be granted. Alternatively, defendant moves for summary judgment under Rule 56(c) of the Federal Rules on the ground that there is no genuine issue as to any material fact and that defendant is entitled to judgment as a matter of law. In both instances, the court must regard the pleadings and matters outside the pleadings in the light most favorable to the non-moving party.

On the same date on which the airplane crash occurred, the decedent had signed an "Agreement for Voluntary Services" with the United States Forest Service. The Agreement provided the following:

"1. Description of work to be performed: Will serve on a wilderness cleanup crew. Duties will include sacking up garbage, hauling garbage to pick up locations, rolling up phone line, naturalizing campsites, clearing trails, and performing other duties as assigned.

2. All of the above-described work will be noncompensable. Except as otherwise provided, I understand this service will not confer on me the status of a federal employee.

3. I understand that either the Forest Service or I may cancel this agreement at any time by notifying the other party.

I hereby volunteer my services as described above to assist the Forest Service in its authorized work.

[signed] Thomas J. TerKeurst
Signature of Volunteer

6–11–79"

Following the decedent's signature, the Agreement continued in part:

"ACCEPTANCE FOR THE
FOREST SERVICE

The Forest Service agrees while this arrangement is in effect to:

1. Finance your necessary incidental expenses, to the extent funds are available.

2. Consider you as a federal employee for the purpose of tort claims and compensation for work injuries."

This portion of the Agreement was signed by the personnel officer of the Forest Service, but not by the decedent.

In an affidavit dated January 23, 1981, attached to defendant's motion, Thomas Markey, the Deputy Associate Director for Federal Employees' Compensation in the United States Department of Labor, stated that the decedent "was killed while in the performance of his duties as a volunteer with the National Forest Service." In accordance with the Federal Employees' Compensation Act, 5 U.S.C. § 8134(a) (1980), the sum of $792.00 was paid to plaintiff, Ter-Keurst's mother, for funeral and burial expenses. Plaintiff was also paid the sum of $200.00 as reimbursement of the costs of termination of the decedent's status as an "employee" of the United States. 5 U.S.C. § 8133(f) (1980).

In its motion to dismiss or for summary judgment, defendant contends that (1) the decedent was a federal employee for the purpose of the Federal Employees Compensation Act, 16 U.S.C. § 558a–558d (1974); (2) the Compensation Act represents the exclusive remedy for federal employees injured or killed while in the scope of their employment; and (3) any determination by the Secretary of Labor as to the applicability of the Compensation Act is final and non-reviewable. Defendant also requests that in tne event its motion to dismiss or for summary judgment is denied, the action be transferred to the District of Idaho.

In her brief in opposition to defendant's motion, plaintiff contends that (1) the decedent never agreed to be considered an employee of the Forest Service for the purpose of the exclusivity provision of the Compensation Act; (2) there is a question of fact whether the decedent was a volunteer for the Forest Service at the time of his death that precludes granting defendant's motion; (3) the decedent was not injured in the course of his employment; and (4) the determination of the Secretary of Labor does not preclude recovery under the Federal Tort Claims Act. Plaintiff opposes defendant's request to transfer the case to the District of Idaho.

Under 16 U.S.C. § 558a, the Secretary of Agriculture

"is authorized to recruit, train, and accept... the services of individuals without compensation as volunteers for or in aid of interpretive functions, visitor services, conservation measures and development, or other activities in and related to areas administered by the Secretary through the Forest Service."

With respect to the employment status of volunteers in the Forest Service, 16 U.S.C. § 558c(b) and (c) provide the following:

"(b) For the purpose of the tort claim provisions of [28 U.S.C. § 2671–80], a volunteer under sections 558a to 558d of this title shall be considered a Federal employee.

(c) For the purposes of subchapter I of Chapter 81 of Title 5, relating to compensation to Federal employees for work injuries, volunteers under sections 558a to 558d of this title shall be deemed civil employees of the United States within the meaning of the term 'employee' as defined in section 8101 of Title 5, and the provisions of that subchapter shall apply."

Under 5 U.S.C. § 8101(1)(B), an "employee" includes:

"an individual rendering personal service to the United States similar to the service of a civil officer or employee of the United States, without pay or for nominal pay, when a statute authorizes the acceptance or use of the service, or authorizes payment of travel or other expenses of the individual . . ."

By the terms of the contract to which the decedent clearly assented, he agreed that "this service will not confer on me the status of a federal employee." In the bottom half of the Agreement entitled "Acceptance For The Forest Service," it states that the "Forest Service agrees while this arrangement is in effect to . . . [c]onsider you as a federal employee for the purpose of tort claims and compensation for work injuries." The signature of the Personnel Officer appears below this language; however, there is no indication that Thomas J. TerKeurst had signed or otherwise agreed to this clause.

As a general rule, contracts of the United States are governed by federal law. *Bituminous Casualty Corp. v. Lynn,* 503 F.2d 636, 641 (6th Cir.1974). Where Congress has not adopted a different standard, however, it is customary to apply the principles of general contract law. *Priebe & Sons, Inc. v. United States,* 332 U.S. 407, 411, 68 S.Ct. 123, 125, 92 L.Ed. 32 (1947). It is a fundamental rule of contract law that the offer and acceptance must express assent to one and the same thing and that there must be no substantial or material variance between them. *Iselin v. United States,* 271 U.S. 136, 46 S.Ct. 458, 70 L.Ed. 872 (1926). In the present case the portion of the contract entitled "Acceptance For The Forest Service," substantially and materially varied the terms of that portion of the contract that Thomas J. TerKeurst had signed, offering his services to the Forest Service. These contradictory provisions raise a genuine issue of material fact that cannot be resolved by means of the lean record now before the court.

Plaintiff contends that the decedent was not injured in the course of his work with the Forest Service; therefore, regardless of his status as a volunteer or an employee, a claim would not arise under the Compensation Act. The Affidavit of Thomas Markey states that "Mr. TerKeurst was killed while in the performance of his duties as a volunteer with the National Forest Service."

Plaintiff alleges that the decedent was simply a passenger on defendant's airplane and not in the course of his duties as a volunteer with the Forest Service. An employee who is injured outside the scope of his employment is not covered under 5 U.S.C. § 8116(c) and accordingly can sue under the Federal Tort Claims Act, 28 U.S.C. § 2674. *Vantrease v. United States,* 400 F.2d 853, 855 (6th Cir. 1968). Mr. Markey's affidavit did not detail any underlying facts in concluding that Thomas TerKeurst was killed while performing his duties as a volunteer.

Rule 56(e) of the Federal Rules of Civil Procedure states in part that "[s]upporting . . . affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Legal conclusions and ultimate facts may not properly be set forth in an affidavit. *Bryant v. Kentucky,* 490 F.2d 1273, 1275 (6th Cir.1974); 6 *Moore's Federal*

*Practice* ¶ 56.22[1] at p. 1316. Accordingly, the court finds that there is a genuine issue of material fact whether the decedent was performing his duties as a volunteer while aboard the Forest Service plane.

The Compensation Act assigns to the Secretary of Labor the responsibility of administering and deciding all questions arising under the Act. 5 U.S.C. § 8145 (1980). The Act further empowers the Secretary to delegate to his subordinates any of the powers conferred on him by the Act. *Id.* Acting in his role as the Deputy Associate Director for Federal Employees' Compensation in the office of Workers' Compensation Programs, United States Department of Labor, Thomas Markey was delegated the responsibility of administering the Federal Employees' Compensation Act. Thomas J. TerKeurst's death was found to be covered by the Compensation Act and in accordance with 5 U.S.C. § 8134(a) (1980), the sum of $792.00 was paid to plaintiff for funeral and burial expenses. Mrs. TerKeurst was paid the additional sum of $200.00 as the personal representative of the decedent for reimbursement of the costs of termination of the decedent's status as an employee of the United States, pursuant to 5 U.S.C. § 8133(f) (1980).

Plaintiff argues that the determination of the Secretary is null and void because she neither filed a claim under the Federal Employees Compensation Act nor participated in the action before the Secretary. 5 U.S.C. § 8121 (1980) provides that "[c]ompensation under this subchapter may be allowed only if an individual or someone on his behalf makes claim therefor." 5 U.S.C. § 8124 (1980) states:

"The Secretary of Labor shall determine and make a finding of facts and make an award for or against payment of compensation under this subchapter after ... considering the claim *presented by the beneficiary* and the report furnished by the immediate supervisor."

Plaintiff asserts that she was not apprised of the decision or her right to question it, in apparent violation of the statutory procedure set forth above. The Government for its part has not indicated whether or not the procedures of the Federal Employees Compensation Act were ever followed. Therefore, there is a genuine issue of material fact that cannot be resolved by way of the motion to dismiss or for summary judgment.

### VENUE

Defendant requests that this action be transferred to the District of Idaho. In support of its request, the Government contends that the following factors justify this change of venue: (1) the plane crash occurred in Idaho; (2) the law applicable to this action under the Federal Tort Claims Act is Idaho law; (3) the "vast majority of witnesses" are located in Idaho; and (4) the aircraft wreckage is located in Idaho.

Plaintiff contends that the Government has failed to establish that it would suffer hardship or otherwise be inconvenienced by not transferring the case to the District of Idaho. In support of her argument, plaintiff refers to *Richards v. Upjohn Co.*, 406 F.Supp. 405, 406–407 (E.D.Mich.1976) for the proposition that a defendant must point to a "specific hardship" such as the number of witnesses who would be inconvenienced or unwieldly equipment that would have to be moved.

Pursuant to 28 U.S.C. § 1402(b) (1976): "Any civil action on a tort claim against the United States under subsection (b) of section 1346 of this title may be prosecuted only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred."

It is clear that the two judicial districts where this action may be prosecuted are Michigan, where plaintiff resides, or Idaho, where the plane crash giving rise to this action occurred. Under 28 U.S.C. § 1404 (1976):

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

Defendant's allegation of inconvenience is not supported by particulars in the

form of proof or affidavits and, therefore, "cannot be accorded much weight in balancing conveniences." *Essex Crane Rental Corp. v. Vic Kirsch Constr. Co.,* 486 F.Supp. 529, 535 (S.D.N.Y.1980). In fact, defendant does not even allege a hardship if venue remains in Michigan. Although the Government states that the "vast majority" of witnesses reside in Idaho, it does not specify the actual number of witnesses, the nature of their testimony, nor the extent to which they would be inconvenienced. In *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), the court stated:

> "An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility [sic] of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, 'vex,' 'harass,' or 'oppress' the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."

*Id.* at 508, 67 S.Ct. at 843. Because defendant has failed to specify circumstances indicating the "relative advantages" of a change of venue to the District of Idaho, the court will deny the request for transfer.

1. The court's order denying the motion was filed on February 16, 1982. On February 26, defendant requested and was granted leave to file a motion to reconsider. The motion was filed on the Monday following the Friday deadline set by the court. While this delay might constitute minor negligence on defendant's part, it does not rise to a level of sanctionable behavior, especially since plaintiff has not

## ON MOTION FOR RECONSIDERATION

On February 16, 1982, this court filed an opinion and order denying defendant's motion to dismiss and/or for summary judgment. The case is now before the court on defendant's motion for reconsideration of that denial.[1]

Thomas J. TerKeurst was killed in an airplane crash on June 11, 1979, when a DC–3 aircraft owned and operated by the United States Forest Service crashed into the Selway River in Northeastern Idaho. On the basis of a factfinding operation conducted by the Forest Service, it appears that both engines of the DC–3 failed to operate at the time of the crash. This action was instituted by the temporary personal representative of the Estate of Thomas J. TerKeurst. Jurisdiction is based on 28 U.S.C. §§ 1346(b) and 2674.

Defendant's motion to dismiss and/or for summary judgment was based on three separate grounds. It was urged that venue did not lie in this court (Fed.R.Civ.P. 12(b)(3)) and that plaintiff had failed to state a claim upon which relief could be granted (Fed.R. Civ.P. 12(b)(6)). Alternatively, defendant claimed it was entitled to summary judgment under Fed.R.Civ.P. 56 because there exists no genuine issue of fact and the United States is entitled to judgment as a matter of law.

Defendant's theory of relief in this case is based on the Federal Employees' Compensation Act, 5 U.S.C. § 8101, *et seq.* (FECA). It is argued that Mr. TerKeurst was a federal employee at the time of his death and, therefore, subject to the terms of FECA which provide an exclusive remedy for injuries or death of a federal employee. 5 U.S.C. § 8116(c).[2]

shown that she was prejudiced by defendant's tardiness. In short, the court is satisfied that the deadline of Fed.R.Civ.P. 60(b) was given its due respect by defendant in this proceeding.

2. This limitation is also applicable to actions by the employee's legal representatives and, therefore, applies in this case.

■ The court denied defendant's motion after determining that there existed genuine issues of material fact. Specifically, the court could not conclude on the basis of the record before·it that Mr. TerKeurst at the time of his death was covered by FECA.[3] In particular, the record did not establish that when plaintiff's decedent went down with the airplane he was performing his duties as a volunteer for the Forest Service. Furthermore, the court could not determine on the record before it that the government had complied with the procedures of FECA in processing the compensation payments that were paid on behalf of Mr. TerKeurst.[4]

In support of its motion for reconsideration, defendant has embellished the factual record of this case with affidavits. Rule 56(e) contemplates such a procedure and allows the parties to submit affidavits, answers to interrogatories or deposition questions as well as other materials in support of their positions. Defendant has submitted affidavits responsive to the court's findings in its denial of the original dismissal motion, and for the reasons stated below, the defendant's motion for summary judgment is hereby granted.

Rule 56(c) provides that a party shall be entitled to summary judgment if it can show that there exists no genuine issue of material fact and that it is entitled to judgment as a matter of law. In the instant case, it is beyond dispute that if Mr. Ter-Keurst was a "volunteer" or a federal employee under 16 U.S.C. § 558a, b and c, and if he was acting in the course of his employment at the time of his death, then the exclusive remedy provisions of FECA bar recovery in this action. *See,* 5 U.S.C. §§ 8101(1)(B), 8102(a)(2), 8116(c).

In response to the court's finding that a factual issue existed as to Mr. TerKeurst's status at the time of his death, the government has produced affidavits setting forth facts that are admissible in evidence. The affidavit of Mr.· Arthur L. Seamans shows that as a recruiter for the Forest Service of volunteers for summer project work, he received an application from Mr. TerKeurst dated May 17, 1979. The affidavit further shows that on May 30, 1979, Mr. Seamans wrote to Mr. TerKeurst and told him his application had been accepted and that "he was to report to work at 0800 on June 11 at the Smokejumper Loft, an area under the control of the United States.... " Mr. Seamans further states, "I further informed [Mr. TerKeurst] that he would be signed up as a volunteer and would then fly to Moose Creek for a week of intensive training."

The facts contained in Mr. Seamans' affidavit are undisputed. Also undisputed is the fact that on June 11, 1979, Mr. Ter-Keurst boarded the Forest Service plane after signing an "Agreement for Individual Voluntary Services." However, in opposing defendant's motion, plaintiff asserts that Mr. TerKeurst's status under FECA is not beyond dispute and that even if the decedent was covered by virtue of his status, he was not killed "while in the performance of his duty," 5 U.S.C. § 8102(a) and, therefore, is not covered by FECA. I disagree on both points.

■ First, defendant's affidavits establish that Mr. TerKeurst had reported to the Forest Service prior to his death. ·His re-

3. Mr. TerKeurst had been accepted by the Forest Service as a "volunteer" under a project established by Congress. *See,* 16 U.S.C. §§ 558a, b and c. Section 558c(c) specifically provides that for purposes of FECA, "relating to compensation to Federal employees for work injuries, volunteers ... shall be deemed civil employees of the United States within the meaning of the term 'employee' as defined in section 8101 of Title 5.... " The court notes that this section does not expressly state that the statute applies in cases where such volunteers are killed during the course of their affili-

ation with the government, but assumes that the term "injuries" is sufficiently broad to include death.

4. Plaintiff received a payment of $200.00 pursuant to 5 U.S.C. § 8133(f). The government paid funeral expenses in the amount of $792.00. To the plaintiff's lament that "a low remedy is no remedy," the court responds with sympathy. However, it is all too clear that the United States government may dictate the conditions under which claims against it may be made. *See,* 28 U.S.C. §§ 2674, 2680; 1346(b).

porting date was June 11, 1979, and he complied with that directive. I agree with plaintiff that the determination of plaintiff's status is a question of fact. However, no facts have been introduced to dispute the evidence that Mr. TerKeurst reported to the Forest Service, signed an "agreement," and boarded an airplane, all on June 11, 1979, and all at the express direction of persons who were acting as supervisors for the Forest Service.[5] In its initial consideration of the Rule 56 motion, the court did not have the benefit of Mr. Seamans' affidavit, and, therefore, could not determine with sufficient certainty that Mr. TerKeurst's status as a volunteer with the Forest Service had commenced prior to the crash.

Plaintiff argues, however, that plaintiff "has [sic] not yet even started training for the work to be performed and was enroute to the place for training" when the fatal crash occurred. Therefore, says plaintiff, the death did not occur in the course of employment. I find this reasoning specious. It is undisputed that plaintiff's decedent was under the direct and immediate supervision of the Forest Service personnel from the time he reported on the morning of June 11, 1979, until his death later that day. It is further undisputed that he had willingly placed himself in that position, albeit without perhaps fully appreciating the legal ramifications of his choice. In short, defendant correctly states that Mr. TerKeurst was aboard the DC–3 in his capacity as a federal employee enroute to a federal job site to fulfill the terms of his agreement. To suggest that no employment relationship existed at the time of death is certainly an appropriate response to defendant's claim, but plaintiff has not put forth facts that would rebut the conclusion that the relationship indeed existed.

■ Concededly, Mr. TerKeurst had not actually commenced providing services under his agreement. He was enroute to his job site when the crash occurred. However, under the facts of this case, it is sufficient to establish FECA coverage if the employee is within a "zone of special danger" created by the conditions of his employment when the death occurs. See, O'Leary v. Brown-Pacific-Maxon, 340 U.S. 504, 507, 71 S.Ct. 470, 471, 95 L.Ed. 483 (1950); Avasthi v. United States, 608 F.2d 1059 (5th Cir.1979).[6] Certainly the risks to which decedent was exposed when he boarded the plane would not have arisen had decedent not subjected himself to the supervision of the Forest Service. Therefore, while Mr. TerKeurst was not actually performing any duties, he was travelling from one site to another, both of which were under the control of the government, and he was well within the supervisory authority of Forest Service agents.

5. Plaintiff argues that Mr. TerKeurst had not entered into an employment agreement with the government, at least not on terms that showed his consent to be treated as a federal employee for FECA purposes. However, as plaintiff recites in her brief, "[w]hether the relationship arises by authority of contract or statute is a distinction without a difference for purposes of evaluating the relationship in question ..." Therefore, the contract analysis is of no significance in this case. Whether Mr. TerKeurst was a federal employee for FECA purposes is without question a factual issue, and one which the court now has an adequate factual basis to resolve.

6. Plaintiff relies upon Bailey v. United States, 451 F.2d 963 (5th Cir.1971) for the proposition that since Mr. TerKeurst was "still traveling to the place where he was to be trained for the described work," he was not covered by FECA. However, Bailey is distinguishable from the instant case. In Bailey, the claimant was a civilian employee of an army laundry who was struck by a military truck on government premises while she was returning to her home in her automobile. As the court noted there:

> "[Plaintiff] was traveling home on a street which was apparently open to all persons authorized to be on the army base. She was not under any supervision from her employer, and the driving of the automobile was not an activity connected to the usual hazards of laundry work. [citation omitted] Absent any showing that the street traveled by Mrs. Bailey was a 'zone of danger' special [footnote omitted] incident to her laundry employment, we hold that the location of the collision in this case was of small import...."

451 F.2d at 967.

By contrast, plaintiff's decedent was under the supervision of government personnel and was within the "zone of special danger" created by the conditions of his employment which required him to fly into an area inaccessible by highway. Plaintiff's reliance on Bailey is unavailing.

Finally, defendant notes that the Secretary of Labor determined that decedent was covered by FECA, and that finding is not reviewable by a court of law. 5 U.S.C. § 8128(b)(2). In denying the original summary judgment motion, the court noted that it had not been sufficiently informed to permit a finding that no material issue of fact existed in connection with the administrative processing of the FECA award. However, defendant has produced undisputed evidence by affidavit upon personal knowledge of Frank A. Entler that plaintiff's award was processed expeditiously and that she was represented by an attorney during the administration of the FECA procedures. Therefore, plaintiff's challenge to the award on due process grounds must fail.[7]

For the reasons stated above, the case is dismissed. Summary judgment is appropriate and is hereby granted to defendant.

7. The fact that Mrs. TerKeurst did not initiate the claims procedure does not entitle her to elect remedies where no such election is allowed by statute. If the government's payment of the claim was wrongful because no claim had been filed, see, 5 U.S.C. § 8121, it does not necessarily follow that the exclusive remedy provisions of FECA are avoided.