Linda **WOODRUFF,** as Administratrix of the Estate of Gordon R. Woodruff, Plaintiff–Appellant,

v.

**UNITED STATES** of America **DEPARTMENT OF LABOR, OFFICE OF WORKERS COMPENSATION PROGRAM,** George E. Rivers, etc., et al., Defendants–Appellees.

No. 90–7323.

United States Court of Appeals, Eleventh Circuit.

Feb. 10, 1992.

Rehearing and Rehearing En Banc Denied April 9, 1992.

Joel E. Dillard, Baxley, Dillard & Dauphin, Birmingham, Ala., James P. Smith, Huntsville, Ala., for plaintiff-appellant.

Frank W. Donaldson, U.S. Atty., Herbert J. Lewis, III, Asst. U.S. Atty., Birmingham, Ala., Jeffrica Jenkins Lee, Robert S. Greenspan, U.S. Dept. of Justice, Civil Div., Appellate Staff, Washington, D.C., for defendants-appellees.

Before FAY and COX, Circuit Judges, and HENDERSON, Senior Circuit Judge.

PER CURIAM:

Linda Woodruff, as Administratrix of the Estate of Gordon R. Woodruff, appeals a judgment of the United States District Court for the Northern District of Alabama (1) granting summary judgment to the defendant, the United States, and (2) dismissing her late husband's Federal Tort Claims Act ("FTCA") complaint against the United States for lack of subject matter jurisdiction. The amended complaint alleged that the Employees' Compensation Appeals Board ("the ECAB"), a subdivision of the Department of Labor, deprived her husband, Gordon Woodruff, of due process of law and violated a clear statutory mandate when it found that he was eligible to receive compensation benefits under the Fed-

eral Employees' Compensation Act ("FECA"), 5 U.S.C. § 8101 *et seq.*, thereby denying him the right to pursue a tort claim under FTCA. The three primary questions before us are (1) whether 5 U.S.C. § 8102(a) contains a clear statutory mandate which was violated by the ECAB in this case, (2) whether Woodruff was denied an FTCA cause of action without due process of law and (3) whether the ECAB violated the separation of powers doctrine. We agree with the district court that there was no violation of a clear statutory mandate, that Woodruff was not deprived of due process and that the ECAB did not violate the separation of powers doctrine. We therefore affirm the district court's dismissal of the action.

Since the facts of this case are not in dispute, the grant of summary judgment and dismissal of the complaint for lack of subject matter jurisdiction are questions of law which are reviewable *de novo* on appeal. *Morrison v. Washington County, Ala.*, 700 F.2d 678, 682 (11th Cir.1983).

## I. BACKGROUND

### *The Federal Employees' Compensation Act*

Enacted in 1916, FECA provides workers' compensation coverage for federal civilian employees who are injured while in the performance of their duties. 5 U.S.C. § 8102(a).[1] It is the exclusive remedy against the United States for any federal employee whose injuries or death fall within the scope of the statute, and precludes recovery in another direct judicial proceeding or under a federal tort liability statute. 5 U.S.C. §§ 8116(c)[2] and 8173.[3]

---

**1.** 5 U.S.C. § 8102(a) states that "[t]he United States shall pay compensation as specified by this subchapter for the disability or death of an employee resulting from personal injury sustained while in the performance of his duty, unless the injury or death is—

(1) caused by willful misconduct of the employee;

(2) caused by the employee's intention to bring about the injury or death of himself or of another; or

(3) proximately caused by the intoxication of the injured employee."

**2.** 5 U.S.C. § 8116(c) provides in part that "[t]he liability of the United States ... with respect to

the injury or death of an employee is exclusive and instead of all other liability of the United States ... to the employee, his legal representative, spouse ... and any other person otherwise entitled to recover damages from the United States ... because of the injury or death in a direct judicial proceeding, in a civil action ... or by an administrative or judicial proceeding under a workmen's compensation statute or under a Federal tort liability statute...."

**3.** 5 U.S.C. § 8173 states that "[t]he liability of the United States ... with respect to the disabili-

The Secretary of Labor is authorized to administer FECA, to promulgate rules and regulations to aid its administration and to decide all questions arising under the statute. 5 U.S.C. §§ 8145 [4] and 8149.[5] Under the authority granted in § 8145(2), the Secretary has delegated responsibility for FECA management to the Director of the Office of Workers' Compensation Programs ("OWCP").

After being presented with a claim by an employee, the Director must make final findings of fact and decide whether the employee is entitled to compensation under FECA. 5 U.S.C. § 8124(a).[6] The Director's determination can be appealed by the employee to the ECAB, an appellate arm of the Department of Labor. 5 U.S.C. § 8149.[7] The ECAB is bound to follow applicable law and the rules and regulations of the Secretary, but its decisions on the claims of individual employees are final. *Id.*

The Secretary's decision to award or deny compensation to a particular claimant is not subject to judicial review. 5 U.S.C. § 8128(b).[8] Conclusions of law and fact made by the Secretary or the ECAB are also immune from judicial review. *Id.*

ty or death resulting from injury ... of an employee referred to by sections 8171 and 8172 of this title, shall be determined as provided by this subchapter. This liability is exclusive and instead of all other liability of the United States...."

4. 5 U.S.C. § 8145(a) mandates that "[t]he Secretary of Labor shall administer, and decide all questions arising under, this subchapter. He may—

(1) appoint employees to administer this subchapter; and

(2) delegate to any employee of the Department of Labor any of the powers conferred on him by this subchapter."

5. 5 U.S.C. § 8149 authorizes the Secretary of Labor to "prescribe rules and regulations necessary for the administration and enforcement of this subchapter...."

6. According to 5 U.S.C. § 8124(a) "[t]he Secretary of Labor shall determine and make a finding of facts and make an award for or against payment of compensation under this subchapter after—

## Facts

Gordon R. Woodruff was a civilian employee of the United States Army stationed at Redstone Arsenal, Alabama. His office was located in a particular building on the base, but he was occasionally required to travel to other locations around the base to perform special tasks. He was also assigned a regular unpaid lunch break between 11:00 to 11:30 A.M. each working day, during which he was free to travel off-base to eat or perform personal errands.

On February 26, 1987, Woodruff's supervisor directed him to obtain signatures on a document from three persons stationed at three separate worksites on the base. Before leaving his office, Woodruff told another supervisor that he would take a longer than usual lunch hour while procuring these signatures so that he could travel off the base to purchase a coat.

By 11:00 that morning, Woodruff had obtained the first two signatures on his list. He then decided to begin his lunch hour, and headed onto the main road leading out of the army base. His destination was nearby Huntsville, Alabama, where he intended to purchase the coat.

(1) considering the claim presented by the beneficiary and the report furnished by the immediate superior; and

(2) completing such investigation as he considers necessary."

7. 5 U.S.C. § 8149 requires that "[t]he rules and regulations [prescribed by the Secretary] shall provide for an Employees' Compensation Appeals Board of three individuals designated or appointed by the Secretary with authority to hear and, subject to applicable law and the rules and regulations of the Secretary, make final decisions on appeals taken from determinations and awards with respect to claims of employees...."

8. 5 U.S.C. § 8128(b) states that "[t]he action of the Secretary or his designee in allowing or denying a payment under this subchapter is—

(1) final and conclusive for all purposes and with respect to all questions of law and fact; and

(2) not subject to review by another official of the United States or by a court by mandamus or otherwise...."

Before Woodruff could leave Redstone Arsenal, however, a military bus ran through a red light and crashed into his car. As a result of this collision, Woodruff suffered severe injuries that left him incapacitated and that required treatment in a rehabilitation center for three years. Woodruff never recovered from his injuries, and died during the pendency of this appeal.

### Woodruff's FECA Claim

Woodruff's wife applied for FECA benefits for her husband on March 2, 1987, a few days after the accident. After filing the application, Mrs. Woodruff retained an attorney who told her that her husband might have a cause of action under the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq.[9] He also advised her that the FTCA action would be barred if she accepted FECA benefits. The attorney then sent two letters to the representative of the Workmen's Compensation Office at Redstone Arsenal, the first on March 5, 1987 and the second on March 30, 1987, seeking to withdraw the Woodruffs' application for FECA benefits.

However, after conducting "extensive legal research and factual investigation," the attorney decided that there might be a substantial question of FECA coverage. Brief for Appellants at 12. For this reason, he requested on April 4, 1987 that the OWCP formally process and consider Woodruff's FECA claim.

On September 14, 1987, the OWCP found that Woodruff was eligible for FECA benefits because he had been injured while in the performance of his duties. The OWCP relied upon the "premises rule" in making this determination. The "premises rule" states that "as to employees having fixed hours and places of work, injuries occurring on the premises of the employing establishment, while the employee is going to or from work, before or after working hours, or at lunch time are compensable." *Annette Stonework,* 36 ECAB 306 (1983); *see generally* 1 Arthur Larson, The Law of Workmen's Compensation § 15 (1990) (discussing the "premises rule" in the context of state workers' compensation law). Applying the "premises rule" to the facts of this case, the OWCP found that Woodruff was injured while still on the premises of Redstone Arsenal and while he was on his way to lunch. Consequently, it concluded that he was eligible for FECA compensation.

Woodruff exercised his right of appeal under § 8149 and requested that the ECAB either comply with his initial request to withdraw his FECA claim or deny the relief awarded by the OWCP. The ECAB agreed with the OWCP that Woodruff's injuries were compensable under FECA. It stated that "[i]t is a general rule of workers' compensation law that, as to employees having fixed hours and place of work, injuries occurring on the premises of the employing establishment, while the employees are going to or from work, before or after working hours, or at lunch time are compensable." *Gordon R. Woodruff,* No. 89–390 (ECAB May 26, 1989). The ECAB found that the main base road where Woodruff incurred his injuries benefitted his employer as the primary route into and out of the base for anyone wishing to conduct business there. This "nexus" between the place of the injury and the benefit the property provided to his employer was sufficient to classify the main base road as the premises of the employer. Having found that the injuries occurred on the premises of his employer, the ECAB found that the second part of the "premises rule" was satisfied because Woodruff was injured during his lunch hour. Therefore, the appellate panel held that he was eligible for FECA coverage since he received his injuries while in the course of employment: i.e., he was injured on his employer's premises and while on his way to lunch. It affirmed the OWCP's decision that he was eligible for FECA benefits. The ECAB issued its final order on October 26, 1989, denying Woodruff's petition for

**9.** 28 U.S.C. § 2674 states that "[t]he United States shall be liable ... [for] tort claims, in the same manner and to the same extent as a private individual under like circumstances...."

rehearing. *Gordon R. Woodruff,* No. 89–390 (ECAB October 26, 1989).

### Woodruff's FTCA claim

During the pendency of his FECA claim, Woodruff filed an action pursuant to FTCA in the United States District Court for the Northern District of Alabama. The FTCA waives the immunity of the United States for liability to suits in tort. The Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680 (1988). The original FTCA complaint sought damages against the United States arising from the alleged negligence of the bus driver who had crashed into Woodruff's automobile. After the ECAB affirmed the OWCP decision awarding FECA benefits to Woodruff, he amended his FTCA complaint to allege that the ECAB violated a clear statutory mandate requiring it to follow applicable law (Count II), that the ECAB deprived him of due process and violated the separation of powers doctrine (Count III) and that § 2–804–4 of the Federal (FECA) Procedural Manual, which provides guidelines for determining whether an employee was in the "performance of duty" at the time of his injury, was void for vagueness (Count IV).

The district court concluded that the ECAB had not violated a clear statutory mandate, that the ECAB had not committed any constitutional violations and that § 2–804–4 was not impermissibly vague. It therefore dismissed Counts II, III, and IV, finding that it lacked subject matter jurisdiction to review the ECAB's determination concerning Woodruff's eligibility for FECA coverage. Since Woodruff had been awarded FECA benefits and was therefore not entitled to pursue his tort claim, the court also dismissed his FTCA action against the United States.

**10.** *See supra* note 8.

**11.** *See supra* note 2.

**12.** Mrs. Woodruff's argument is slightly different on appeal than that made before the district court. Woodruff maintained in the district court that the Secretary violated § 8149, which requires that the ECAB follow "applicable law." Woodruff attempted to show that "applicable law" in this case included federal case law that

### II. DISCUSSION

█ FECA is a comprehensive workers' compensation law for federal employees that is designed to provide quick and uniform coverage for work-related injuries. *Gill v. United States,* 641 F.2d 195 (5th Cir. Unit A Feb.1981). The Secretary's final determination to award or deny coverage under FECA in a particular case is usually not subject to judicial review that could prolong the administrative process. 5 U.S.C. § 8128(b)(2).[10] After the Secretary makes a determination to award benefits, the injured employee's exclusive remedy is to accept FECA coverage. 5 U.S.C. § 8116(c);[11] *Cobia v. United States,* 384 F.2d 711 (10th Cir.1967), *cert. den.,* 390 U.S. 986, 88 S.Ct. 1182, 19 L.Ed.2d 1290 (1968).

█ There are two instances, however, in which a federal court may exercise jurisdiction over a final decision of the Secretary under FECA. *Staacke v. United States Secretary of Labor,* 841 F.2d 278 (9th Cir.1988). The federal courts retain jurisdiction to review charges that the Secretary violated a clear statutory mandate or prohibition, and to consider constitutional claims. *Id.*

Woodruff applied for and was awarded FECA coverage for his injuries. Therefore, we are barred from reviewing the Secretary's actions unless Mrs. Woodruff can show that the Secretary violated either a clear statutory mandate or the Constitution.

### Clear Statutory Mandate Claim

█ On appeal, Mrs. Woodruff contends that the Secretary violated the clear statutory mandate contained in § 8102(a).[12] Sec-

he contended bans the use of the "premises rule" to determine FECA coverage. *See Avasthi v. United States,* 608 F.2d 1059 (5th Cir.1979); *Bailey v. United States,* 451 F.2d 963 (5th Cir. 1971).

In her capacity as administratrix of Woodruff's estate, she does not urge on appeal that federal case law, or any regulation or rule promulgated by the Secretary, contains a clear mandate that bars the use of the "premises rule" to determine FECA coverage. We therefore

tion 8102(a) provides coverage for any injury that a federal employee "sustain[s] while in the performance of his duty...." She claims that the ECAB effectively read the element of "duty" out of § 8102(a) when it awarded FECA coverage to her husband for an injury he sustained while traveling away from his work place to purchase a coat. She characterizes Woodruff's activity at the time of his injury as a shopping excursion, not a lunch period.

Congress has not defined the phrase "in the performance of duty." Mrs. Woodruff thus maintains that it is up to the courts to construe the congressional intent behind § 8102(a). Her assertion ignores the fact that a court would give deference to the Secretary's interpretation of FECA even without the statutory preclusion of judicial review. *See Federal Election Commn. v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 102 S.Ct. 38, 70 L.Ed.2d 23 (1981). Congress has conferred on the Secretary absolute authority to enforce and administer FECA. 5 U.S.C. § 8145. The Secretary "has the 'sole discretionary power' to determine in the first instance" whether to make an award of FECA benefits in a particular case. *See Democratic Senatorial Campaign Comm.*, 454 U.S. at 37, 102 S.Ct. at 45 (quoting *Buckley v. Valeo*, 424 U.S. 1, 112 n. 153, 96 S.Ct. 612, 679 n. 153, 46 L.Ed.2d 659 (1976)). The Secretary is vested with broad policy-making authority to "prescribe rules and regulations necessary for the administration and enforcement" of FECA. 5 U.S.C. § 8149. As a result, the Secretary's authority is "precisely the type ... to which deference should presumptively be afforded." *See Democratic Senatorial Campaign Comm.*, 454 U.S. at 37, 102 S.Ct. at 44.

It is true that courts must reject a statutory construction that is inconsistent with the mandate of Congress, even where deference is presumptively accorded to the agency's interpretation. *Id.* at 32, 102 S.Ct. at 42. However, our authority in this case is limited by § 8128(b) to a determination of whether § 8102(a) contains a clear command that the Secretary or the ECAB has transgressed. *Staacke*, 841 F.2d at 282. Our task is not to develop our own interpretation of the phrase "in the performance of duty," nor is it to choose the best of two competing interpretations. *Id.*

The Secretary has consistently used the "premises rule" to bring an employee's travel to and from work, or to and from lunch, while on the employer's premises within the definition of the phrase "in the performance of duty." *See Wilmar Lewis Prescott*, 22 ECAB 318 (1971); *Emma Varnerin, M.D.*, 14 ECAB 253 (1963). The ECAB has classified Woodruff's activity at the time of his injury as a lunch interval. That decision is a determination of fact or law under FECA that we are unable to review. 5 U.S.C. § 8128(b).[13] We have found no federal case law holding that § 8102(a) contains a clear mandate that would delete lunch-time injuries suffered while on the employer's premises from the language "in the performance of duty." At the same time, an examination of state workers' compensation law indicates that the Secretary's application of the "premises rule" in this case is in conformance with the majority rule. *See* 1 Arthur Larson, The Law of Workmen's Compensation § 15.11 (1990).

In light of the authority that Congress has vested in the Secretary to administer FECA, we cannot say that the ECAB's decision to award FECA coverage for injuries Woodruff sustained during his lunch hour and while on the property of his employer conflicts with the phrase "sustained while in the performance of his duty." We therefore agree with the district court that the Secretary did not violate a clear statutory mandate in this case.[14]

---

consider her to have abandoned this argument. But because Woodruff's contention at the district court level included the general allegation that the Secretary had violated a clear statutory mandate found in applicable federal law, we will consider Mrs. Woodruff's more specific claim that the Secretary violated § 8102(a).

**13.** *See supra* note 8.

**14.** The district court also stated that it was not convinced that the "clear statutory mandate"

## Constitutional Claims

Mrs. Woodruff's three constitutional challenges fall into two categories. First, she makes two contentions that her husband was effectively deprived of an FTCA cause of action without due process by reason of the Secretary's award of FECA benefits. Second, she claims that the ECAB contravened the separation of powers doctrine by refusing to follow federal case law in affirming the award.

*Due process.* Our inquiry into whether there was a denial of due process involves a two-part analysis. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 541, 105 S.Ct. 1487, 1492, 84 L.Ed.2d 494 (1985). We must determine whether Woodruff was deprived of a protected property interest, and if so, what process was due that interest. *Id.*

The answer to the first question is found in *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982).[15] There, the Court stated that "a cause of action is a species of property protected by the ... Due Process Clause." *Id.* at 428, 102 S.Ct. at 1154 (footnote omitted) (citing *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). The government cannot deprive someone who has an entitlement to access to the courts to assert that right unless the government's interests outweigh those of the private litigant. *Logan,* 455 U.S. at 430 n. 5, 102 S.Ct. at 1154 n. 5.

Congress has created an entitlement interest in access to the courts in persons who have a tort claim against the United States. *See* 28 U.S.C. § 2674.[16] Woodruff was injured when a military bus operated by a government employee ran a red light and struck his car. Without examining its merits, we find that Woodruff might have had a colorable FTCA cause of action against the United States. Because FECA is the exclusive remedy for an employee whose injuries fall within its scope, Woodruff was deprived of a protected property interest when the Secretary awarded him FECA compensation. We must next ascertain whether he was accorded the process to which he was entitled in the protection of that interest.

■ Mrs. Woodruff first charges that § 2–804–4 of the Federal (FECA) Procedural Manual ("FECA Manual") is void for vagueness. The FECA Manual establishes policies, guidelines and procedures for determining whether an injured employee is eligible for compensation. After a FECA claim is filed and the OWCP finds that an employee has in fact been injured, the FECA Manual directs the OWCP to decide whether the employee was in the performance of duty when the injury occurred. § 2–804–1.

The FECA Manual divides the performance of duty question into two general categories of employees: those who work on the employer's premises and those who perform part or all of their duties off the employer's property.[17] Since Woodruff worked in a specific location on Redstone Arsenal, his duties fell within § 2–804–4, the sub-chapter covering employees who work on the premises.

Section 2–804–4 provides that "[a]n employee who has a fixed place of employment, and is injured on the premises of the employer, has the protection of FECA unless engaged in an activity which removes the employee from the scope of employment." Two elements must be shown to entitle an employee working on the premis-

---

doctrine can *ever* confer jurisdiction over FECA cases. Other courts have explicitly held that the doctrine is not applicable to FECA cases. *See Paluca v. Secretary of Labor,* 813 F.2d 524, 528 (1st Cir.1987). Our conclusion that there was no violation of a clear mandate in this case does not require us to reach that ultimate issue.

**15.** The district court assumed without deciding that Woodruff had a protected property interest in an FTCA cause of action.

**16.** *See supra* note 9.

**17.** In addition, the FECA Manual creates eleven other categories of *activities* related to the employee's injury that warrant special examination by the OWCP in its inquiry of whether the injury occurred while in the performance of duty. However, the initial question is whether the injury was incurred on or off the employer's premises.

es to compensation: 1) he was injured while on the premises and 2) he was performing assigned duties or engaged in a reasonable incident of employment. § 2–804–4(a).

In seeking the answer to the second question of the two-part due process analysis, we note that Mrs. Woodruff does not contend that the government's interests in providing prompt and uniform FECA coverage for injured federal employees are insufficient to override the private interests of those who have FTCA causes of action. Her claim therefore does not fall within the analytical framework of *Logan*. Nor does she claim that the procedures used by the Secretary denied Woodruff a meaningful opportunity to be heard.

Instead, Mrs. Woodruff maintains that § 2–804–4 is void for vagueness because it does not provide a standard or definition of "premises" to guide the OWCP in its assessment of a FECA claim. She argues that this standardless rule impermissibly delegates public policy to the OWCP and results in *ad hoc* determinations made on a subjective basis. She does not challenge a particular decision of the Secretary in a specific case, but rather the way in which the Secretary's decision-making process deprives a claimant of an FTCA cause of action.

"A decision of law or fact 'under' a statute is made by the Administrator in the interpretation or application of a particular provision of the statute to a particular set of facts." *Johnson v. Robison*, 415 U.S. 361, 367, 94 S.Ct. 1160, 1166, 39 L.Ed.2d 389 (1974) (discussing 38 U.S.C. § 211(a)). Clearly, then, Mrs. Woodruff does not raise a question growing out of FECA. Her void-for-vagueness argument is instead directed to the constitutional validity of § 2–804–4. We therefore have jurisdiction to decide this issue of law arising under the Constitution since § 8128(b)'s prohibition on judicial review governs only decisions made by the Secretary under FECA.

However, the Secretary's motives in awarding or denying FECA compensation cannot enter into our analysis of the due process issue. *See Gill*, 641 F.2d at 197. Even if the OWCP's decision was made on

a subjective basis in this case, a contention for which we see no support, we can consider only whether § 2–804–4 is so vague that the Secretary's use of it to award FECA coverage deprives injured employees of FTCA causes of action without due process.

"It is a basic principle of due process that an enactment is void for vagueness if its *prohibitions* are not clearly defined." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289, 102 S.Ct. 1070, 1075, 71 L.Ed.2d 152 (1982) (emphasis in the original) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972)). Vague enactments offend due process because they do not provide sufficient notice of what is prohibited so that people may guide their behavior accordingly, and because they risk arbitrary application by not furnishing explicit standards for those who enforce them. *Grayned*, 408 U.S. at 108–09, 92 S.Ct. at 2298–99.

Section 2–804–4 does not attempt to guide conduct, but is merely an interpretive rule for the OWCP to follow in making FECA coverage determinations. Mrs. Woodruff's assertion that it is subject to the void-for-vagueness doctrine is wholly without merit.

In an effort to demonstrate that an enactment that does not attempt to regulate conduct can still be attacked for vagueness, Mrs. Woodruff relies principally on *Browning-Ferris Indus. of Ala., Inc. v. Pegues*, 710 F.Supp. 313 (M.D.Ala.1987). *Pegues* does not stand for this proposition. In *Pegues*, a statute that required legislative approval for the site of any hazardous waste treatment facility was declared unconstitutionally vague because it provided no guideline for applicants seeking to obtain a license for such a facility. The *Pegues* statute required those wishing to operate a treatment facility to apply first for a license, but did not tell them what they had to do to comply with the legislature's requirements. In contrast, an employee is not going to restrict the place of his injury to whatever definition of "premises" is out-

lined in the FECA Manual. The employee's behavior is simply not being directed by § 2–804–4.

■ Even if the void-for-vagueness doctrine could be applied to an interpretive rule that does not purport to control behavior in any way, § 2–804–4 is not vague. A rule that does not reach constitutionally protected conduct is void for vagueness only if it is impermissibly vague in all its applications. *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982). The test is whether the enactment is substantially incomprehensible. *Exxon Corp. v. Busbee*, 644 F.2d 1030, 1033 (5th Cir. May 1981), *cert. den., Exxon Corp. v. Georgia Assn. of Petroleum Retailers*, 454 U.S. 932, 102 S.Ct. 430, 70 L.Ed.2d 239 (1981). Here, Woodruff was employed by the United States Army. He was injured on property that was owned by his employer. Although "premises" may be read both more expansively and more narrowly, it is a sufficiently clear standard to include the property owned by Woodruff's employer. Therefore, the facial challenge to § 2–804–4 must fail.[18]

■ Mrs. Woodruff next claims that the ECAB violated certain rules and regulations promulgated by the Secretary when it determined that her husband was eligible for FECA compensation. Specifically, she says that the ECAB violated rules governing diversions from duty (§ 2–804–7(b)(1), FECA Manual) and requiring compliance with principles of workers' compensation law (20 C.F.R. § 10.110(b); § 2–200–3(b), FECA Manual). Here, she attacks the ECAB's application of specific FECA provisions to the facts of Woodruff's particular case. Although her argument is framed as a due process violation, she is really seeking a review of the ECAB's interpretation of FECA provisions promulgated by the Secretary. However, the ECAB's decision arises under FECA, *see Johnson*, 415 U.S. at 367, 94 S.Ct. at 1165, and plainly falls within the scope of § 8128(b) precluding judicial review. We agree with the trial court that we do not have jurisdiction to consider this second due process claim.

*Separation of powers.* Finally, the appellant asserts that the ECAB violated the separation of powers doctrine when it declared that it was not bound by federal court decisions.

■ This allegation centers on a statement by the ECAB that "decisions of the federal courts [while instructive] are not binding on either the [OWCP] or the [ECAB]." *Gordon R. Woodruff*, No. 89–390 n. 11 (ECAB May 26, 1989). The ECAB was responding to Woodruff's argument that the theory that an entire military base may be considered the "premises" of an employer has been rejected explicitly by the federal courts. Before the ECAB, Woodruff relied principally upon this court's decision in *Bailey v. United States*, 451 F.2d 963 (5th Cir.1971), for this contention. In his later FTCA action, Woodruff changed his argument slightly. He maintained that *Bailey* prohibits the ECAB from using the "premises rule" to provide *automatic* coverage for injuries occurring on military reservations while journeying to or from work or to lunch. Mrs. Woodruff still urges on appeal that the ECAB violated the separation of powers doctrine because it did not adhere to *Bailey's* application of the "premises rule."

*Bailey* dealt with whether an FTCA claim by a civilian army employee who was injured while traveling home from work on

---

**18.** Mrs. Woodruff incorrectly labels § 2–804–4 as the "only statement of the premises rule that has been promulgated by the Secretary of Labor." Appellants' Brief at 17. Section 2–804–4 is not a definition of "the premises rule" as it is used in worker's compensation law and applied by the ECAB. Mrs. Woodruff does not deny the constitutionality of the actual "premises rule." Appellants' Reply Brief at 5.

She does challenge the ECAB's use of the "nexus test" to determine whether the location of an employee's injury is part of the employer's premises. The nexus test requires that the employee's use of the property confer a convenience or benefit to the government for it to be considered part of the premises of the employer. Mrs. Woodruff states that a vague enactment can be rescued only by the establishment of explicit standards, but that the nexus test is not explicit enough to save § 2–804–4. We do not address that issue since we find that § 2–804–4 is not subject to the void-for-vagueness theory.

a road open to all persons authorized to be on the base presented a "substantial question" of FECA coverage. The court stated that the "premises rule" "must be treated as but one of a number of factors to be taken into consideration in reaching a decision as to whether or not [an employee's] injury is compensable" under FECA. *Bailey*, 451 F.2d at 966 (emphasis omitted) (quoting *United States v. Browning*, 359 F.2d 937, 940 (10th Cir.1966)); *accord, Avasthi v. United States*, 608 F.2d 1059, 1061 (5th Cir.1979). *Bailey* held that a federal court must defer hearing an FTCA action where there is a substantial question of FECA coverage. The court found in that case that there was not a substantial question of FECA coverage on the facts before it, and therefore entertained the FTCA suit.

Mrs. Woodruff correctly points out that *Bailey* requires more than a mere showing that Woodruff was injured on his employer's premises while going to lunch for there to exist *a substantial question* of FECA coverage. As this court made clear in *Avasthi*, however, whether there is a substantial question of FECA coverage is relevant only to determine "which of two mutually exclusive statutes [FECA or FTCA] applies to this claim." *Avasthi*, 608 F.2d at 1061. "[An] employee must first seek and be denied relief under FECA unless his injuries do not present any substantial question of compensability under that act." *Id.* at 1060 (citing *Somma v. United States*, 283 F.2d 149, 150–51 (3d Cir.1960). The procedural posture of both *Bailey* and *Avasthi* placed the issue of FECA coverage before the court prior to any determination of the issue by the Secretary of Labor.

In this case, however, whether there is a substantial question of FECA coverage has already been decided by the ECAB. Woodruff's attorney formally requested the ECAB to determine the issue of FECA coverage in this case after he concluded that there could be a substantial question as to whether his client's injury was compensable under the Act. The ECAB decided that he was entitled to coverage, and awarded relief under FECA. *Bailey* and *Avasthi*'s application of the "premises rule" is simply not pertinent when the Secretary has already made a determination of FECA coverage. *See Cobia*, 384 F.2d at 712. It does not govern, nor can it, the decisions that the Secretary or the ECAB make under FECA.

Additionally, FECA protects the government from suits brought pursuant to statutes such as the FTCA that were enacted to waive the government's sovereign immunity. *Lockheed Aircraft Corp. v. United States*, 460 U.S. 190, 103 S.Ct. 1033, 74 L.Ed.2d 911 (1983). Whether an injury suffered by an employee on his employer's premises while on the way to lunch is one "sustained while in the performance of his duty" is an issue that must be resolved under FECA. *See Johnson*, 415 U.S. at 367, 94 S.Ct. at 1165. Congress decided to preclude judicial review of any question of law or fact that arises under FECA. 5 U.S.C. § 8128(b). Because Congress' power to prohibit suits against the government is absolute, statutes that deny or withdraw judicial review of claims against the government are constitutional. *Heller v. United States*, 776 F.2d 92, 98 (3rd Cir. 1985), *cert. den.*, 476 U.S. 1105, 106 S.Ct. 1948, 90 L.Ed.2d 358 (1986). We reiterate that *Bailey* would be binding upon this court in a determination of whether it has subject matter jurisdiction to entertain an FTCA suit, as long as a determination of FECA coverage has not already been decided by the Secretary or the ECAB. However, we agree with the district court that the ECAB decided appropriately the issue of FECA coverage in Woodruff's case under the authority vested in the Secretary by Congress.

Accordingly, for the foregoing reasons, the judgment of the district court is

AFFIRMED.